Citation Nr: 1513865 
Decision Date: 03/31/15 Archive Date: 04/03/15

DOCKET NO. 05-24 040 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) in 
Atlanta, Georgia


THE ISSUES

1. Entitlement to higher initial disability ratings for post-traumatic stress disorder (PTSD), currently evaluated as 30 percent disabling from May 6, 2002, to January 3, 2004; 100 percent disabling from January 4, 2004, to March 31, 2004; 50 percent disabling from April 1, 2004, to June 21, 2006; 100 percent disabling from June 22, 2006, to August 31, 2006; 50 percent disabling from September 1, 2006, to July 14, 2009; 100 percent disabling from July 15, 2009, to August 31, 2009; and 50 percent disabling from September 1, 2009. 

2. Entitlement to a total disability rating based on individual unemployability (TDIU) due solely to PTSD.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Mary C. Suffoletta, Counsel 


INTRODUCTION

The Veteran served on active duty from May 1968 to September 1974, to include combat service in the Vietnam Conflict; and his decorations include the Combat Action Ribbon.

These matters initially came to the Board of Veterans' Appeals (Board) on appeal from a July 2003 decision of the RO that granted service connection for PTSD evaluated as 30 percent disabling effective May 6, 2002. The Veteran timely appealed for a higher initial rating, asserting in March 2004 that a higher rating was warranted for PTSD and that he was unemployable, in part due to PTSD.

In May 2009, the RO increased the disability evaluation to 50 percent for PTSD, effective March 9, 2004. Because higher evaluations are available for PTSD both prior to and from that date, and the Veteran is presumed to seek the maximum available benefit for a disability, the claim remains on appeal. See AB v. Brown, 6 Vet. App. 35, 38 (1993).

In January 2010, the Veteran testified during a hearing before the undersigned in Washington, D.C.

In April 2010 and in November 2013, the Board remanded the claim on appeal for additional development. The Board is satisfied there was substantial compliance with its remand orders. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999); Stegall v. West, 11 Vet. App. 268, 271 (1998). 

In the case of Rice v. Shinseki, 22 Vet. App. 447 (2009), the United States Court of Appeals for Veterans' Claims (Court) held, in substance, that every claim for a higher evaluation includes a claim for TDIU where the Veteran claims that his service-connected disabilities prevent him from working. While the Veteran already has been awarded a TDIU, effective from the date in April 2004 when schedular requirements for the award were first met, the evidence of record currently suggests that the Veteran's PTSD alone prevents him from working. Hence, further development is warranted.

Lastly, in addition to reviewing the Veteran's paper claims file, the Board has surveyed the contents of his electronic claims file.

The issue of entitlement to a temporary total rating for intensive PTSD treatment from October 2014 to November 2014 has been raised by the evidence of record, but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2014).

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran and his representative when further action is required.


REMAND

TDIU Due Solely to Service-Connected PTSD 

The Board notes that a TDIU has been in effect since April 1, 2004, based upon several service-connected disabilities. In Bradley v. Peake, 22 Vet. App. 280 (2008), the Court has held that a TDIU rating could serve as the "total" service-connected disability, if TDIU entitlement was solely predicated upon a single disability for the purpose of considering entitlement to special monthly compensation as provided in § 1114(s).

In this case, the Veteran's treating physician, Dr. Coates, indicated that the Veteran's service-connected PTSD adversely impacted his medical conditions (see September 2007 statement by Dr. Coates). Specifically, Dr. Coates opined that the Veteran experienced a significant disturbance in his social and occupational functioning, and could no longer work.

The Veteran's service-connected PTSD is currently evaluated as 30 percent disabling from May 6, 2002, to January 3, 2004; 100 percent disabling from January 4, 2004, to March 31, 2004; 50 percent disabling from April 1, 2004, to June 21, 2006; 100 percent disabling from June 22, 2006, to August 31, 2006; 50 percent disabling from September 1, 2006, to July 14, 2009; 100 percent disabling from July 15, 2009, to August 31, 2009; and 50 percent disabling from September 1, 2009.
 
Service connection is also in effect for coronary artery disease, status-post coronary artery bypass graft surgery, rated as 60 percent disabling from May 6, 2002, and as 30 percent disabling from January 7, 2011; for diabetes mellitus, rated as 20 percent disabling from September 29, 2003; for residuals of cerebrovascular accident with right-sided hemiplegia, rated as 10 percent disabling from December 15, 2003; for hypertension, rated as 10 percent disabling from July 25, 2005; and for residual scars of coronary artery bypass graft surgery, rated as 0 percent (noncompensable) disabling from May 6, 2002. 

The combined disability rating is 70 percent from May 6, 2002; 80 percent from September 29, 2003; 100 percent from January 4, 2004; 90 percent from April 1, 2004; 100 percent from June 22, 2006; 90 percent from September 1, 2006; 100 percent from July 15, 2009; 90 percent from September 1, 2009; and 80 percent from January 07, 2011.

Special monthly compensation under 38 U.S.C.A. § 1114, subsection (s), has been awarded from January 4, 2004, to April 1, 2004; from June 22, 2006, to September 1, 2006; and from July 15, 2009, to September 1, 2009.

The report of an April 2012 VA examination reflects that the Veteran reportedly retired from twenty years as a truck driver in 1998, due to a heart attack.

Given the suggestion by Dr. Coates that the Veteran may no longer be able to work solely due to his service-connected PTSD, the Board finds that the Veteran may still be entitled to special monthly compensation as provided in § 1114(s), for periods of time since May 2002, if he is found to be unemployable due solely to PTSD and there is additional service-connected disability or disabilities that are independently ratable at 60 percent, which are separate and distinct from the 100 percent service-connected disability and involve different anatomical segments or bodily systems. See Bradley v. Peake, 22 Vet. App. 280 (2008).

Higher Initial Ratings for Service-Connected PTSD 

The Board finds that the issues identified on appeal are inextricably intertwined, and that both matters should be adjudicated simultaneously. Harris v. Derwinski, 1 Vet. App. 180 (1991).

Accordingly, the case is REMANDED for the following action:

1. Provide the Veteran with appropriate notice of VA's duties to notify and to assist with regard to substantiating a claim for entitlement to TDIU due solely to PTSD. 

2. Schedule the Veteran for an examination to ascertain the functional impairment resulting solely from his service-connected PTSD since May 2002. The Veteran's claims file, to include a complete copy of this REMAND, must be available to the examiner designated to examine the Veteran, and the examination report should note review of the file.

In proffering an opinion, the examiner should address the Veteran's functional impairment due solely to his service-connected PTSD since May 2002, as it relates to his ability to function in a work setting and to perform work tasks. 

3. After adjudicating the intertwined claim of entitlement to a temporary total rating for PTSD from October 2014 to November 2014, and ensuring that the requested actions are completed, the RO or AMC should re-adjudicate the claims on appeal. If the benefits sought are not fully granted, the RO or AMC must furnish a supplemental statement of the case (SSOC), before the claims file is returned to the Board, if otherwise in order.

The Veteran has the right to submit additional evidence and argument on the matter that the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other
appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).


_________________________________________________
S. S. TOTH 
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2014).